IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDNEY B. STEWART,<br><br>    Plaintiff,<br><br>v.<br><br>MONOGRAM BIOSCIENCES,<br><br>    Defendant.                          / | No. C 11-01181 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

      On September 16, 2011, this Court dismissed *pro se* plaintiff Sidney Stewart's ("Mr. Stewart") Title VII complaint against his former employer, Monogram Biosciences ("Monogram"), with leave to amend. The original complaint was confusing, and spare in its factual and legal allegations. However, in subsequent filings, Mr. Stewart alleged facts that, if well-pled, <u>might</u> have amounted to a properly-pled Title VII claim.

      Mr. Stewart has returned with a First Amended Complaint ("FAC") that consolidates his previous allegations, yet remains confusing, fails to make basic allegations required for Title VII claims, and does not include a prayer for relief. However, it also contains facts that, again, if well-pled, <u>might</u> amount to a Title VII claim. The Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b) and GRANTS the motion to dismiss with leave to amend.

//

## I. BACKGROUND

Mr. Stewart started as an employee at Monogram (then Virologic, Inc.) in October 2001. FAC (dkt. 51) at 2. On February 27, 2009, Mr. Stewart filed a charge with the EEOC against Monogram, alleging race discrimination and retaliation occurring on or after August 26, 2008. Request For Judicial Notice in Support of Motion to Dismiss ("RJN") (dkt. 53) Ex. 1. Monogram terminated Mr. Stewart on May 20, 2009. FAC at 14. Mr. Stewart filed a second EEOC charge, alleging retaliatory discharge, on August 6, 2009. The EEOC mailed a notice of a right to sue for employment discrimination to Mr. Stewart on November 29, 2010. See Notice of Right to Sue (dkt. 1). Mr. Stewart filed a complaint in U.S. District Court for the District of Columbia on February 8, 2011. See Complaint, No. 11-325 (dkt. 1) at 1. That court assumed that the complaint sought relief under Title VII (42 U.S.C. §§ 2000(e) *et seq*.), noted that venue was improper under Title VII, and transferred the case to the Northern District of California. Order Transferring Pro Se Case, No. 11-325 (dkt. 3).

Defendant moved to dismiss. Motion to Dismiss (dkt. 35). On September 16, 2011, this Court dismissed the complaint from the bench, with leave to amend. On October 5, 2011, Mr. Stewart filed an amended complaint. See FAC. The FAC consolidates most of the previously scattered factual allegations, but does little to clarify them. Unlike the original complaint, the FAC does not include a prayer for relief.

The FAC alleges that Mr. Stewart began working for Monogram (then Virologic, Inc.) in October 2011. FAC at 2. It alleges that, around 2005 or 2006, Mr. Stewart applied for and was denied a promotion to the position of Northern Accounts Manager. FAC at 8. It does not allege that Mr. Stewart was qualified for that promotion. Without specifying a time frame, it further alleges that Chip Travis, a white male Monogram employee, inadvertently sent an email intended for Mr. Stewart to Sid Ho, an Asian male employee. Id. at 8. Mr. Ho replied to Mr. Travis, "I think you meant to send this to the black Ron Jeremy." Id. Ron Jeremy is an actor in pornographic films. Id. It alleges that Mr. Ho apologized to Mr. Stewart for the incident, and that Monogram did not take further action. Id. It alleges that in July or August 2008, Mr. Stewart applied for and was denied a Latin America sales position,

2

and that the person Monogram hired had more relevant experience than Mr. Stewart. Id. at 10-11. The FAC further alleges that, on August 28, 2008, Mr. Stewart had a negative interaction with his supervisor, Erin Feeney, in which Ms. Feeney screamed "shut up" at Mr. Stewart. Id. at 2. It alleges that Monogram subsequently denied Mr. Stewart's request to be moved back to his old district under his former supervisor. Id. It further alleges that in January 2009, Monogram gave Mr. Stewart a final written warning as a result of his helping a co-worker prepare an internal letter that complained about Monogram's treatment of Hispanic employees. Id. at 3. It alleges that Monogram then began to scrutinize Mr. Stewart's expense reports more heavily than other employees'. Id. It alleges that Mr. Stewart's annual performance evaluation was pushed back from January 2009 to March 2009, and that Mr. Stewart was singled out as the only employee who did not receive stock options following his evaluation. Id. at 14. Finally, it alleges that Monogram fired Mr. Stewart for consistently having expense reports in excess of the company's $200.00 limit (id. at 14) and also in retaliation for filing the EEOC charge (id. at 2).

Monogram has moved to dismiss. Motion to Dismiss First Amended Complaint ("Mot.") (dkt. 52). It argues that Mr. Stewart cannot state a claim for race discrimination or retaliation under Title VII because many of the claims are time-barred, that Mr. Stewart has not exhausted administrative remedies as to many of the claims, and that regardless, the complaint does not allege facts amounting to a Title VII claim. See generally Mot.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987); see also Walling v. Beverly Enters., 476 F.2d 393, 395-96 (9th Cir. 1973) (holding that any ambiguities must be resolved

3

in favor of the pleading party).

The complaint of a *pro se* plaintiff is "to be liberally construed" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); see also Balisteri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) (noting that "*pro se* pleadings are liberally construed, particularly where civil rights are involved"). Dismissal is improper where a Title VII *pro se* complaint "narrates a sequence of events which arguably give rise to a cause of action and could be addressed by a responsive pleading." Miles v. Ertl Co., 722 F.2d 434, 435 (8th Cir. 1983).[1]

There are limits, however, to the liberal interpretation of a *pro se* complaint. The court may not supply essential elements of a claim that are not pled. Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). Mere conclusions are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

A Title VII complaint need only "aver generally" under Fed. R. Civ. P. 9(c) that all conditions precedent to the filing of the complaint have been met. See EEOC v. Standard Forge and Axle Co., 496 F.2d 1392, 1395 (5th Cir. 1974). Thus, in a Title VII complaint the plaintiff must allege the timely filing of a charge with the EEOC and receipt of and timely action on a notice of the right to sue. United Black Firefighters v. Hirst, 604 F.2d 844 (4th Cir. 1979).

No heightened pleading standard applies to Title VII claims; "the ordinary rules for assessing the sufficiency of a complaint apply." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). Under Federal Rule of Civil Procedure 8(a)(2), the complaint must contain

---

[1] In Miles, the Eighth Circuit reversed a district court's dismissal of the Plaintiff's first amended Title VII complaint (which substantially repeated the original complaint) because although the complaint did not comply with the Federal Rules of Civil Procedure, it gave the defendant fair notice of the claims. 722 F.2d at 435. The Court suggested that the district court appoint counsel to aid the Plaintiff in drafting the complaint. Id.

4

"a short and plain statement of the claim showing that the pleader is entitled to relief." However, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleadings was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect "without contradicting any of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## III.   DISCUSSION

Mr. Stewart has not stated a claim upon which relief can be granted under any Title VII theory, even construing the FAC liberally.

### A.   Preliminary Problems With the FAC

The FAC has two preliminary problems. First, it does not contain a prayer for relief. "A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). Second, it often does not allege the time frames in which many of the events occurred, and many of the alleged events would be time-barred unless part of a continuing violation. "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002) (where a *pro se* litigant had alleged discrete unlawful employment practices, many of which were time-barred on their own, the circuit court improperly invoked the equitable doctrine of continuing violations). However, even setting these problems aside for the purpose of liberally construing this *pro se* complaint, the FAC is flawed on other grounds.

### B.   The FAC Does Not State a Claim Under Any Title VII Theory

Construing the factual allegations liberally, Mr. Stewart <u>might</u> be able to state claims

for race discrimination, racial harassment, or retaliatory discharge. The FAC, however, does not adequately state any of these claims.

Title VII of the Civil Rights Act of 1964 provides:

> (a) Employer practices.
> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000e-2(a).

### 1. Race Discrimination Based on Non-Promotion

Mr. Stewart alleges that he applied for promotions, and was denied them due to his race. FAC at 8, 10-11.

A properly pled Title VII claim for race discrimination based on non-promotion must allege

> (i) that [the Plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

While the FAC does not expressly allege that Mr. Stewart is a member of a protected class under the first element, it is reasonable to liberally construe the FAC as alleging so, especially given the allegation of the "black Ron Jeremy" incident. However, the FAC is also deficient as to third element, in that it does not allege that Mr. Stewart was qualified for the promotions that he was denied. Therefore, the FAC does not state a claim for race discrimination, and the Court DISMISSES this claim.

### 2. Other Race Discrimination Claims

Mr. Stewart alleges that he was told that he would receive a final written warning as a result of his editing of an internal memorandum regarding Monogram's treatment of

6

1 Hispanic employees, and then refusing to disclose to Monogram his email correspondences
2 with the memorandum's author. FAC at 3.
3     Title VII prohibits discrimination or adverse employment action against an individual
4 "<u>because</u> of such individual's race . . . ." 42 U.S.C.A. § 2000e-2(a) (emphasis added).
5     Mr. Stewart has not adequately pled this claim so as to put the Defendant on notice.
6 Mr. Stewart seems to allege that he is a black man, but here the alleged internal
7 memorandum related to Monogram's treatment of Hispanic employees. While it is possible
8 to imagine related allegations that could amount to a Title VII claim, the FAC falls short of
9 stating a race discrimination claim that makes sense on its face. The Court therefore
10 DISMISSES this claim.

### 3. Racial Harassment

12     Mr. Stewart seems to allege that he suffered racial harassment. <u>See generally</u> FAC.
13     A properly pled claim for racial harassment under Title VII must allege that
14 harassment occurred on the basis of race. <u>See</u> <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S.
15 57, 66 (U.S. 1986) (noting that courts have applied the principles governing sex-based
16 discrimination to claims based on race). The complaint must further allege

> that under the totality of the circumstances the harassment was pervasive or severe enough to alter the terms, conditions or privilege of employment. Relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

20 <u>Harris v. Sutton Motor Sales & RV Consignments Corp.</u>, 406 Fed. Appx. 181, 183 (9th Cir.
21 2010); <u>citing</u> <u>Meritor</u>, 477 U.S. at 67, <u>and</u> <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23
22 (1993). "[I]solated incidents of inappropriate behavior [do] not create a hostile or abusive
23 environment." <u>Candelore v. Clark County Sanitation Dist.</u>, 975 F.2d 588, 590 (9th Cir.
24 1992). "[S]imple teasing, . . . offhand comments, and isolated incidents (unless extremely
25 serious) will not amount to discriminatory changes in the terms and conditions of
26 employment." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L.
27 Ed. 2d 662 (1998) (internal quotation marks omitted). Rather, the offensive conduct "must
28 be extreme to amount to a change in the terms and conditions of employment . . . ." <u>Id.</u>

7

The first allegation in the FAC that could be construed as harassment is the instance in which a Monogram employee referred to Mr. Stewart as "the black Ron Jeremy." However, the FAC alleges that Monogram apologized, and the FAC does not allege that the incident was so pervasive as to alter the terms of Mr. Stewart's employment or affect his work performance. The second allegation that could be construed as harassment, that Mr. Stewart's supervisor screamed "shut up," is not alleged to be tied to Mr. Stewart's race. See FAC at 2. The same goes for the third allegation that could be construed as harassment, that Mr. Stewart's expense forms were more heavily scrutinized than other employees'. See FAC at 3. Because the FAC does not claim that the alleged incidents altered the terms of Mr. Stewart's employment, and because some of the allegations are not clearly tied to Mr. Stewart's race, the Court DISMISSES these claims.

### 4. Retaliatory Discharge

Mr. Stewart alleges that was fired as a result of filing an EEOC charge. FAC at 2.

A properly pled Title VII claim for retaliation must allege (1) that the Plaintiff engaged in a protected activity, (2) that he was subsequently subjected to an adverse employment action, and (3) that a causal link exists between the two. Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011).

Here, the FAC does allege that Mr. Stewart filed an EEOC charge, and that he was subsequently discharged, but it is self-defeating as to causation. The FAC admits that Monogram fired Mr. Stewart for consistently filing excessive expense reports. The FAC does not allege that the expense reports were a pretext for any true, retaliatory purpose for firing Mr. Stewart. Because causation is not properly alleged, the Court DISMISSES this claim.

### C. Leave to Amend is Appropriate.

The Court concludes that amendment might not be futile. See Cook, 911 F.2d at

//

//

//

8

246-47.[2] The Court therefore GRANTS the motion to dismiss the FAC with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss with leave to amend. Plaintiff <u>must amend within thirty (30) days</u>.

**IT IS SO ORDERED.**

Dated: December 9, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[2] Mr. Stewart might wish to contact the Court's Legal Help Center. The services offered by the Legal Help Center at U.S. District Court for the Northern District of California are listed at http://www.cand.uscourts.gov/helpcentersf. The Center's phone number is (415) 782-9000 ext. 8657.